UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| LILLIAN BLAKE, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Case No. 23-cv-01378 |
| UPH PROCTOR HOSPITAL, ) | |
| ) | |
| Defendant. ) | |

### ORDER

This matter is before the Court on Defendant UPH Proctor Hospital's ("UPH" or "Defendant") Rule 12(b)(6) Motion to Dismiss the Amended Complaint (the "Motion" or "Motion to Dismiss"). ECF No. 18. For the reasons stated herein, Defendant's Motion is GRANTED in PART and DENIED in PART.

### BACKGROUND[1]

**I.     Factual Background**

Plaintiff Lillian Blake ("Plaintiff") began working as a nurse at UPH in Peoria, Illinois in 2021. ECF No. 17 at ¶ 12. Plaintiff is African American, and claims that she was subjected to race-based discrimination, harassment, and a hostile work environment shortly after beginning her employment at UPH. She notes that UPH had a "stark lack of diversity," with only 10 African American employees among UPH's total workforce of 250 employees. *Id.* at ¶¶ 13, 23, 24. Plaintiff describes the culture at UPH as an "environment of discrimination" that "pervaded the entire company." *Id.* at ¶ 21. Specifically, Plaintiff alleges that at time of her employment, "a survey showed that 85% of Defendant's African American employees felt they did not belong

---

[1] The following facts are taken from Plaintiff's Complaint, which the Court accepts as true for the purposes of a motion to dismiss. *See Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015).

1

because of the hostile work environment." *Id.* at ¶ 22. Plaintiff stated that notwithstanding this environment, she dedicated herself to her career as a nurse. *Id.* at ¶ 25.

Plaintiff alleges, however, that shortly after starting at UPH, she began to experience individual instances of discrimination and harassment. Plaintiff first alleges that from the moment she began working at UPH, she was referred to as "you" instead of her name, while non-African American colleagues were always referred to by their names. *Id.* at ¶¶ 26, 27. On another instance, Plaintiff states that a supervisor, Jane, told her "[y]ou are intimidating, and I don't feel comfortable near you" while her supervisor was seated, and Plaintiff was standing next to her. *Id.* at ¶¶ 46, 47. Plaintiff states that she noticed other African American employees were also referred to as "you" instead of their names, making it clear that this was an effort to ostracize or isolate them based on race. *Id.* at ¶ 29. Plaintiff alleges that she complained to her supervisor that she felt disrespected when referred to as "you," and that her supervisor responded: "'that's just the way the [sic] see you,' making it clear that the treatment was related to Plaintiff's race.'" *Id.* at ¶¶ 30, 31. She argues that no corrective actions were taken following her complaints. *Id.* at ¶ 32. Plaintiff states that these statements imply racial bias as they strip individual identity from African American employees and employ common stereotypes. *Id.* at ¶¶ 28, 48–49.

Plaintiff alleges that her situation worsened under a new supervisor, Trish. *Id.* at ¶ 33. She claims that Trish frequently directed her to fill out false reports in the form of discharge paperwork for patients who were no longer under Plaintiff's care. *Id.* at ¶¶ 34–37. Plaintiff viewed these requests as "improper, because it would require Plaintiff to falsify documents as she was not the employee responsible for the patient at the time of discharge." *Id.* at ¶ 38. Plaintiff alleges that on several occasions she refused, and in return, was reprimanded and threatened with disciplinary action, including termination. *Id.* at ¶¶ 39, 40. Plaintiff states that Supervisor Trish did not request

2

non-African American employees to falsify documents, and that as a result of facing reprimands, Plaintiff feared she would be terminated if she failed to follow Trish's improper directions. *Id.* at ¶¶ 41–42. Plaintiff also alleges that Trish frequently assigned her to newly admitted patients immediately before the end of Plaintiff's shift, forcing Plaintiff to stay late. *Id.* at ¶ 43. Plaintiff claims that her non-African American employees were not assigned new admissions at the end of their shifts and required to stay late. *Id.* at ¶¶ 44–45.

Plaintiff states that she reported the incidents to corporate via email on several occasions, but that no actions were taken. *Id.* at ¶¶ 53, 54. Plaintiff states that she was assured from Human Resources that an individual meeting would be set to address her complaints, but no meeting was scheduled, and no remedial action was taken. *Id.* at ¶ 55. On October 18, 2022, Plaintiff participated in a group-wide meeting designed to address issues of racial discrimination in the workplace. *Id.* at ¶¶ 57, 58. At this meeting, she learned that other African American employees experienced similar racism in the workplace, including being referring referred to as "you" or other "dismissive, impersonal terms," and that they were "often asked to falsify documents, and if they refused, they were reprimanded." *Id.* at ¶¶ 61–65. Plaintiff claims that it became clear that her complaints were not taken seriously, and the culture would not change any time soon, as no remedial measures were discussed. *Id.* at ¶¶ 64–66.

Finally, Plaintiff states that she was forced to resign as her supervisor, Trish, again assigned her a new admission that would have required Plaintiff to stay past her scheduled shift, despite the fact that white colleagues were available to take the new admission. *Id.* at ¶¶ 67, 68. As a result, Plaintiff claims she was forced to resign because she was under fear of reprimand for refusing to obey Trish's improper directives, was harassed with late assignments, and saw no remedial measures taken from UPH or at the October 2022 meeting. *Id.* at 69.

## II. Procedural Background

Plaintiff filed a charge of discrimination with the EEOC (the "EEOC Charge") on June 23, 2023, alleging discrimination based on race, color, and retaliation between 2021 and October 19, 2022. ECF No. 1-2. The EEOC Charge states that Plaintiff was unlawfully terminated on October 19, 2022, because of her race, and that she was subjected to race-based harassment and retaliation for engaging in a protected activity. *Id.* at 2. The EEOC Charge contains a basic description of the conduct, including being referred to as "you," "intimidating," and Plaintiff's concerns that Defendant demonstrated a "deeply troubling pattern" reprimanding African American employees. *Id.* at 2–3. The EEOC issued a Notice of Right to Sue letter on September 14, 2023, which dismissed Plaintiff's Charge due to their failure to complete its investigation within 180 days of the Charge being filed ECF No. 1-3.

On October 16, 2023, Plaintiff filed her first Complaint with this Court. ECF No. 1. The Complaint brought claims for race-based discrimination under both 42 U.S.C. § 1981 and Title VII, race-based harassment under Title VII, and race-based retaliation under 42 U.S.C. § 2000e, *et seq*. On November 22, 2023, Defendant filed the Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), along with a Memorandum in Support. ECF Nos. 11, 12. The Court held a hearing on May 2, 2024, to discuss the Motion and issued an order on May 6, 2024, granting Defendant's first motion to dismiss. ECF No. 16. There, the Court found that Plaintiff failed to allege sufficient facts to support her constructive discharge theory, and that her claims for racial discrimination, harassment, and retaliation relied on barebone accusations, many of which lacked racial animus. The Court, however, allowed Plaintiff an opportunity to submit an amended complaint if she could cure the noted deficiencies. *Id.* at 11.

On June 5, 2024, Plaintiff filed the operative First Amended Complaint. ECF No. 17. The First Amended Complaint reasserts the same counts for race-based discrimination (Count I) under 42 U.S.C. § 1981, race-based harassment (Count II) in violation of Title VII, race-based discrimination (Count III) under Title VII, and retaliation (Count IV) in violation of 42 U.S.C. § 2000e, *et seq. Id.* Defendant moves to dismiss the First Amended Complaint asserting that Plaintiff did not cure the deficiencies noted in the first dismissal order. *See* ECF Nos. 18, 19. Plaintiff failed a Memorandum in Support of the First Amended Complaint, replying to Defendant's Motion to Dismiss. ECF No. 21. The matter is fully briefed, and this Order follows.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that dismissal is proper if a complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, which when accepted as true, states a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In resolving the defendant's motion, the court must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *McMillan v. Collection Prof'ls, Inc.*, 455 F.3d 754, 758 (7th Cir. 2006). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of h[er] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).

## DISCUSSION

Despite asserting four counts, the First Amended Complaint essentially contains three categories of claims: (i) claims for race-based discrimination under 42 U.S.C. § 1981 in Count I

and Title VII in Count III; (ii) a claim for race-based harassment under Title VII in Count II; and (iii) a claim for retaliation under 42 U.S.C. § 2000e, *et seq.* in Count IV. The Court will address each category of claim below.

### I. Race-Based Discrimination

Title VII prohibits employers from discriminating against their employees on the basis of race. *See* 42 U.S.C. § 2000e-2(a); *Lewis v. Indiana Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022). Similarly, "[s]ection 1981 prohibits race discrimination in the making and enforcing of contracts." 42 U.S.C. § 1981(a); *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). A Title VII discrimination claim requires an employee prove: (1) that she is a member of a protected class; (2) that she suffered an adverse employment action; and (3) causation. *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018). Similarly, race discrimination claims under Section 1981 utilize a nearly identical analysis, requiring a plaintiff show: "(1) [the plaintiff] is a member of a racial minority; (2) the defendant[ ] had the intent to discriminate on the basis of race; and (3) the discrimination concerned the making or enforcing of a contract." *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 756 (7th Cir. 2006); *see McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 788 (7th Cir. 2019) (explaining similarity in analysis for Title VII and Section 1981 discrimination claims).

The Court previously found that the Plaintiff's initial Complaint did not allege facts supporting a constructive discharge, which she utilizes as the basis for the "adverse employment action" she faced on her race-based discrimination claims. ECF No. 16 at 6. Specifically, the Court reasoned that Plaintiff failed to allege facts supporting her conclusion that she was forced to resign and rejected the barebones allegations surrounding the alleged reprimands she received, and October 2022 meeting. *Id.* at 7. The Court further found that Plaintiff's discriminatory facts, as

alleged in the initial Complaint, did not demonstrate racial animus; specifically, her allegations that she was referred to as "you" instead of her name and called "intimidating." *Id.*

Plaintiff's First Amended Complaint, however, adds significantly more detail to these claims. First, rather than simply stating she was called "you" due to her race, Plaintiff now adds she believed this conduct had racial animus because she was told "that's the way the [sic] see you," when she complained about the conduct. Further, Plaintiff now pleads that other African Americans voiced similar complaints about being called "you" or other dismissive terms, rather than their names, while non-African American employees were always referred to by their names. While these new allegations do not leave race as the only plausible factor, they provide a rough connection toward racial animus.

Second, Plaintiff's First Amended Complaint included additional support for her allegation that she was reprimanded on account of her race. Plaintiff now lists a specific supervisor and gives detail on the specific conduct—namely, that she faced reprimands if she refused to falsify reports and was frequently asked to stay beyond her shift to access newly admitted patients. Plaintiff now also states that other African American employees faced similar demands and that non-African American employees did not. Like her above allegations, these facts too do not leave race as the only possible explanation. The Court finds that while these allegations are still relatively conclusory, they provide just enough detail to survive a motion to dismiss in a discrimination case. *McCowan v. City of E. Moline*, No. 416CV04199SLDJEH, 2017 WL 4273293, at *5 (C.D. Ill. Sept. 26, 2017) ("In particular, a Title VII plaintiff need not set out in any great factual detail how the first and second elements of the claim are linked by racial animus; relatively conclusory allegations will do.").

Having found at least some plausible racial animus, the Court next finds that these new allegations provide additional support for her constructive discharge arguments. The key inquiry is whether, from the standpoint of a reasonable employee, the working conditions had become so unbearable that he or she was forced to resign. *Sanders v. AeroCare USA, Inc.*, No. 17-CV-1543, 2017 WL 6001489, at *3 (C.D. Ill. Dec. 4, 2017) (citing *Thompson v. Mem. Hosp. of Carbondale*, 625 F.3d 394, 401–02 (7th Cir. 2010)). The above facts regarding potential racially related acts, taken as true, support a finding of unbearable working conditions.

Plaintiff's claims that she and other African American employees were intentionally called dismissive terms, continually asked to stay late, exclusively asked to falsify reports under threat of reprimand or termination, and ignored by HR demonstrates an unreasonable workplace. Taking these new allegations as true, the Court finds that they provide a plausible explanation for why Plaintiff felt a need to resign—particularly given the fact that she was asked to falsify reports under alleged threat of termination. Therefore, the Court finds Plaintiffs' First Amended Complaint provides sufficient detail to advance her racial discrimination claims past a motion to dismiss. In doing so, the Court solely finds that Plaintiff's claims are plausible and makes no implication as to "whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Rather, the Court merely finds that Plaintiff provides just enough to present a story that holds together. *See McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (internal citations omitted).

**II.    Race-Based Harassment**

In addition to claims for racial discrimination, Plaintiff alleges she experienced race-based harassment in violation of Title VII. "To prove a claim for hostile work environment based on race, an employee must show that: '(1) he [or she] was subject to unwelcome harassment; (2) the

harassment was based on his [or her] race; (3) the harassment was severe or pervasive so as to alter the conditions of the employee's work environment by creating a hostile or abusive situation; []and (4) there is a basis for employer liability.'" *Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 895–96 (7th Cir. 2016) (quoting *Porter v. Erie Foods Int'l, Inc.*, 576 F.3d 629, 634 (7th Cir. 2009)). "Although a connection between the harassment and the plaintiff's protected class need not be explicit, 'there must be some connection, for not every perceived unfairness in the workplace may be ascribed to discriminatory motivation merely because the complaining employee belongs to a racial minority.'" *Cole*, 838 F.3d at 896 (quoting *Zayas v. Rockford Mem'l Hosp.*, 740 F.3d 1154, 1159 (7th Cir. 2014)). "Nevertheless, forms of harassment that might seem neutral in terms of race . . . can contribute to a hostile work environment claim if other evidence supports a reasonable inference tying the harassment to the plaintiff's protected status." *Id.* (internal citation omitted); *Paschall v. Tube Processing Corp.*, 28 F.4th 805, 813–14 (7th Cir. 2022).

Like her claims for racial discrimination, the Court also previously rejected Plaintiff's claims for race-based harassment, as alleged in the initial Complaint. ECF No. 16 at 9. The Court reasoned that Plaintiff's initial Complaint did not allege facts that demonstrated harassment based on race. *Id.* Plaintiff's First Amended Complaint, however, added additional allegations supporting these claims.

First, as the Court discussed above, Plaintiff added that other African American employees were also called "you" instead of their names, and that Plaintiff was told "that's how [they] see you." Second, Plaintiff now cites to a survey that 85% of African Americans felt some form of hostility or discrimination at work. Third, Plaintiff added additional details regarding the inequitable reprimands she faced, linking them to falsified reports, late-shifts, and issues experienced by other African Americans, as discussed at the October 2022 meeting. The Court

9

finds that these added allegations form a plausible inference tied to Plaintiff's protected status. *Paschall*, 28 F.4th at 815–16.

The Court further notes that because it found the higher standard for constructive discharge and discrimination met, it also finds that Plaintiff has alleged enough to support her claims for a hostile work environment and harassment. *Thompson*, 625 F.3d at 401; *Sanders*, 2017 WL 6001489, at *3. At this stage, Plaintiff need only demonstrate that the acts were racial in character, not explicitly racial. *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 544 (7th Cir. 2011). And further, the Court is mindful that, in ruling on a motion to dismiss for racial harassment, it should not "carve up the incidents of harassment and then separately analyze each incident, by itself, to see if each rises to the level of being severe or pervasive." *Mason v. S. Illinois Univ. at Carbondale*, 233 F.3d 1036, 1044–45 (7th Cir. 2000). The Court, therefore, finds that Plaintiff's harassment claim also survives the Motion to Dismiss.

### III. Retaliation

Plaintiff also alleges that she faced retaliation when she reported incidents of harassment and discrimination. A claim for retaliatory discharge requires: (1) that a plaintiff engaged in statutorily protected activity; (2) that a plaintiff suffered an adverse action; and (3) that there is a causal link between the protected activity and the adverse action. *See Seale v. Medsource, LLC*, No. 17-CV-1072, 2017 WL 1591826, at *2 (C.D. Ill. Apr. 28, 2017). In the retaliation context, "adverse employment action" simply means an employer's action that would dissuade a reasonable worker from participating in protected activity. *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cty.*, 804 F.3d 826, 833 (7th Cir. 2015).

Like Plaintiff's other claims, the Court initially rejected her allegations regarding retaliation. The Court found that the initial Complaint did not contain sufficient details of

Plaintiff's reports to corporate, such as when she sent the reports, to whom, and what conduct she reported.  ECF No. 16 at 11.  The Court further found that her retaliation claim failed because she had not adequately supported her constructive discharge arguments.  *Id.*

Here, the Court has already found that Plaintiff's First Amended Complaint adds enough factual detail to support her racial discrimination and harassment claims.  The Court notes that ordinarily a retaliation claim would therefore also be satisfied, as retaliation claims face a lower bar than a Title VII discrimination claim.  *Huri*, 804 F.3d at 833. The Court, however, finds that even as amended, Plaintiff still fails to adequately plead a causal link between the protected activity and the adverse action.

While Plaintiff now describes to whom she reported the activity, she still does not provide approximate dates for the reports or when the HR personnel responded that they would schedule a meeting.  Plaintiff also did not provide when Trish—the supervisor subjecting her to reprimands— began leading her shifts.  The Court, therefore, is unable to conclude how her treatment worsened under Trish without a rough timeline of the reported conduct and the alleged retaliation in increased reprimands.

In her reply, Plaintiff relies on the October 2022 meeting as the protected activity and argues that she was forced to resign when her supervisor, Trish, asked her to stay late for newly admitted patients.  ECF No. 21 at 10.  Plaintiff, however, does not provide any dates on when Trish requested her to stay late making it difficult to link this purported discriminatory act to the protected activity.  And, like the reports, Plaintiff does not even allege that Trish was aware Plaintiff attended the meeting—making it impossible to infer that Trish asked Plaintiff to stay late under threat of reprimand solely due to Plaintiff attending the meeting.  The Court, therefore, finds

11

that the First Amended Complaint lacks a clear causal link to infer retaliation. Therefore, this claim must be dismissed.

## CONCLUSION

For these reasons, Defendant's [18] Motion to Dismiss is GRANTED in PART with respect to Count IV and DENIED in PART with respect to Counts I–III. Accordingly, Count IV of the First Amended Complaint is DISMISSED. Defendant is permitted to file an answer to Counts I–III within 28 days of this Order.

Entered on August 12, 2024.

/s/ Michael M. Mihm
Michael M. Mihm
United States District Judge